U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed November 29, 2007**                                              **United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TIC UNITED CORP., | § | CASE NO. 00-37234-BJH-7 |
| | § | |
| Debtor. | § | |
| | § | |
| JOHN H. LITZLER, CHAPTER 7 | § | |
| TRUSTEE for the ESTATE OF TIC | § | |
| UNITED CORP., | § | |
| Plaintiff, | § | ADV. PRO. 06-3261-BJH |
| - against - | § | |
| | § | |
| CHAMBLEE & RYAN, P.C., and | § | |
| GALLAGHER BASSETT SERVICES, | § | |
| INC., | § | |
| Defendants. | § | |

### MEMORANDUM OPINION and ORDER

Before the Court is a motion by John H. Litzler, Chapter 7 Trustee ("Trustee") for the estate

**Memorandum Opinion and Order**

of TIC United Corp. (the "Debtor") to compel the production of documents (the "Motion"). The Court has jurisdiction over the parties and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. The following constitutes the Court's findings of fact and conclusions of law to the extent they are required.

## I. Factual Background

Prior to its bankruptcy filing on November 7, 2000, the Debtor was engaged in the manufacturing and trucking business. The Debtor employed approximately 2,600 people and owned or operated more than 3,000 tractors and trailers. By the very nature of its business, the Debtor was frequently exposed to lawsuits for personal injury, property damage and wrongful death. At the time of its bankruptcy filing, numerous tort claims were pending against the Debtor. The Debtor maintained insurance policies insuring against such losses with Lumberman's Mutual Casualty Company, a subsidiary of Kemper Insurance Company ("Kemper").

The Debtor's case was converted to one under Chapter 7 on March 3, 2003, and the Trustee was appointed.

Pursuant to an Order entered on April 2, 2004, defendant Gallagher Bassett Services, Inc. ("GBS") was acting as a "Third-Party Administrator," administering a court-approved alternative dispute resolution procedure for the benefit of the Trustee with respect to tort claims filed against the Debtor and/or the estate. In that capacity, GBS maintained computer records on charges and payments made in connection with tort claims filed against the Debtor and/or the estate.

The Trustee alleges in the Motion that sometime in 2005, GBS hired Defendant Chamblee & Ryan, P.C. ("Chamblee"), without either his approval or the Court's approval, to perform certain work relating to the Debtor's tort claim files. The Trustee further alleges that either GBS or

Chamblee, again without Court approval, withdrew between $80,000 and $100,000 of the estate's money, that had been set aside to cover insurance retainer obligations in connection with the tort claims against the Debtor. Although the evidentiary record on this point has not been fully developed, counsel for GBS stated at the hearing on the Motion that Kemper controlled an account funded by the Debtor to cover its self-insured retention obligations under the Debtor's insurance policy with Kemper. Apparently, the funds which the Trustee alleges were paid to Chamblee came from this Kemper-controlled, but Debtor-funded, account.

On March 29, 2006, the Trustee filed this adversary proceeding to recover those funds from GBS or Chamblee. In Count 1 of the complaint, the Trustee seeks turn-over of approximately $118,000 from Chamblee under Section 542 of the Bankruptcy Code. Count 2 of the complaint seeks turn-over of that same sum from GBS. Counts 3 and 4 seek avoidance of transfers in that amount from GBS and Chamblee, respectively, under Section 549. Count 5 asserts a claim for damages and sanctions as against both GBS and Chamblee for willful violations of the automatic stay. Accordingly, all of the Trustee's claims in this adversary proceeding arise under federal law.

In the Motion, the Trustee alleges that he served requests for the production of documents on GBS and Chamblee on May 21, 2007. GBS responded on June 21, 2007, and Chamblee responded on June 22, 2007. Both GBS and Chamblee asserted certain objections to the requests, including attorney-client privilege and attorney work product. Neither GBS nor Chamblee provided a "privilege log" at that time.

On August 3, 2007, the Trustee filed the Motion, contending that responsive documents had not been produced despite numerous requests, and that privilege logs had not been provided. *See* Fed. R. Bankr. P. 7026. However, by the time the Motion was heard on September 17, 2007, many

**Memorandum Opinion and Order** 3

of the documents had been produced. At the conclusion of the hearing, the Court ruled on the parties' disputes with respect to (i) production of GBS's electronic database and (ii) the Trustee's request for sanctions. *See* Order entered Oct. 1, 2007 (Docket No. 49). However, with respect to the allegedly privileged documents, the Court (i) directed further briefing by the parties on the privilege issues raised at the hearing and (ii) agreed to review the withheld documents *in camera* in order to determine the defendants' privilege claims. The last of the parties' briefs was filed on October 1, 2007, following which the Court took the Motion under advisement.

## II. The Parties' Arguments

Chamblee argues that GBS hired it to perform legal work relating to the Debtor's tort claim files,[1] and that in conjunction with those services, Chamblee communicated with and reported to GBS – the claims agent for the liability carriers. Therefore, Chamblee argues that as among the Debtor, itself and GBS, Chamblee "enjoyed a traditional tri-partite relationship between insurer, insured and insurance defense counsel." Chamblee & Ryan, P.C.'s Resp. To Trustee's Mot. to Compel Production of Documents and Br. In Supp., p. 2. Chamblee asserts it is withholding certain documents on claims of privilege, including "documents created after the Trustee provided a demand letter to Chamblee & Ryan." *Id*. Moreover, Chamblee asserts that it is also withholding certain documents because GBS has claimed they are privileged, to "avoid waiving any applicable privilege held by GBS."[2] *Id*.

---

[1] Counsel for GBS conceded at the hearing that there was no formal retention agreement as between GBS and Chamblee; rather, counsel argued that those parties had a long-standing working relationship.

[2] In its response to the Motion, GBS simply argued that the Motion was moot, as it had produced a privilege log by that time. However, in its post-hearing brief, GBS relied upon the arguments earlier advanced by Chamblee in Chamblee's response to the Motion, including Chamblee's argument that the "tri-partite relationship" between insurer, insured and insurance defense counsel caused the withheld documents to be protected from disclosure. GBS further argued in its post-hearing brief that this tripartite relationship terminated when the Trustee sued them both and

**Memorandum Opinion and Order** 4

In contrast, the Trustee argues that

> the Trustee/Debtor was the client in the underlying transaction. GBS was its claims agent and Chamblee somehow ended up as unauthorized legal counsel charging fees to the Trustee/Debtor. The Debtor was charged with fees and services, where [sic] it was treated as the client by these Defendants in 2005. Any claim of attorney/client communication between only the two Defendant agents should be overruled.

Trustee's Reply to the Defs' Separate Responses to Trustee's Mot. to Compel, p. 3, ¶ 6. The Trustee also argues that GBS and Chamblee have waived any privileges, by virtue of their failure to provide privilege logs contemporaneously with their responses to the Trustee's discovery requests.

### III.   Legal Analysis

The attorney client privilege is "the oldest of the privileges for confidential communications known to the common law. Its central purpose is to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Willy v. Admin. Review Bd.*, 423 F.3d 483, 495 (5th Cir. 2005). However, since the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose. *United States v. Robinson*, 121 F.3d 971 (5th Cir. 1997).

The burden of proof to establish the existence of the attorney-client privilege rests on the party asserting the privilege. *In re Sante Fe Intern. Corp.*, 272 F.3d 705 (5th Cir. 2001); *U.S. v. Kelly*, 569 F.2d 928 (5th Cir. 1978). The privilege claimant must establish both the existence of the privilege and the absence of a waiver. *James v. Harris County Sheriff's Dep't*, 237 F.R.D. 606 (S.D. Tex. 2006).

---

was replaced by an attorney-client relationship between Chamblee and GBS directly. Unfortunately, however, GBS offered no evidence to support the existence of an attorney-client relationship between them as found below. Chamblee did not file a post-hearing brief.

As the Trustee's complaint against Chamblee and GBS arises under federal law, the federal common law of privilege applies. *Willy v. Admin. Review Bd*., 423 F.3d 483, 495 (5th Cir. 2005) ("questions of privilege that arise in the courts of adjudication of federal rights are governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience"); *Gilbreath v. Guadalupe Hosp. Found., Inc.*, 5 F.3d 785 (5th Cir. 1993) (an action to enforce a subpoena issued by the Merit Systems Protection Board is a federal action, and thus the right to assert a privilege is dictated by federal law).

The Fifth Circuit has held that the attorney-client privilege applies only if:

(1) the asserted holder of the privilege is or sought to become a client;
(2) the person to whom the communication was made
    (a) is a member of the bar of a court, or his subordinate and
    (b) in connection with this communication is acting as a lawyer;
(3) the communication relates to a fact of which the attorney was informed
    (a) by his client
    (b) without the presence of strangers
    (c) for the purpose of securing primarily either
        (i) an opinion on law or
        (ii) legal services or
        (iii) assistance in some legal proceeding, and not
    (d) for the purpose of committing a crime or tort; and
(4) the privilege has been
    (a) claimed and
    (b) not waived by the client.

*United States v. Kelly* 569 F.2d 928 (5th Cir. 1978); *Blum v. Spectrum Rest. Group-Employees Group Life & Supp. Life Plan*, No. 4:02-CV-92, 2003 WL 367059 (E.D. Tex. Feb. 18, 2003). In essence, the privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. However, "[t]he privilege also protects communications from a lawyer to the client, at least if they would tend to disclose the client's confidential communications." *Blum*, 2003 WL 367059 at *2 (citing *Hodges, Grant & Kaufmann v. I.R.S.*, 768 F.2d 719, 720 (5th Cir. 1985)).

The "work-product" doctrine is codified in Fed. R. Civ. P. 26(b)(3). *In re Kaiser Aluminum and Chem. Co.*, 214 F.3d 586 (5th Cir. 2000). Rule 26(b)(3) provides, in relevant part, that a party may obtain discovery of documents . . . otherwise discoverable . . . and prepared in anticipation of litigation . . . by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means."

The party who asserts work-product protection bears the burden of establishing that the document was prepared in anticipation of litigation. If the party can satisfy that requirement, the burden shifts to the party seeking discovery to overcome that protection. *Hodges, Grant & Kaufmann v. I.R.S.*, 768 F.2d 719 (5th Cir. 1985). The doctrine extends to and protects from disclosure documents prepared in anticipation of litigation, *see* Fed. R. Civ. P. 26(b)(3) and, among other things, it "insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).

The Court has examined each of the documents submitted *in camera* in light of these legal principles and the defendants' claims of privilege.

### A. Attorney-Client Privilege

The Trustee first argues that the defendants waived the assertion of any privilege because the privilege logs were not timely produced, relying upon *Sonnino v. University of Kansas Hosp. Auth.*, 221 F.R.D. 661 (D. Kan. 2004). However, that case is distinguishable. In *Sonnino*, the defendants

resisting discovery on the ground of privilege did not assert the privilege at all in response to the discovery request at issue, and did not provide a "privilege log" until nearly four months later in response to a motion to compel. Nor did the defendants rely upon the privilege log at the hearing on the motion to compel. Instead, the defendants raised the privilege issue for the first time on their motion for reconsideration.

Here, the Trustee concedes that GBS and Chamblee both asserted privilege in their initial responses to the document requests. He complains, however, that they did not provide the privilege logs for two months. While the "timing and specificity of an objection are of the essence when it comes to asserting a privilege during discovery," *Felham Enterprises (Cayman) Ltd. v. Certain Underwriters at Lloyd's*, No. 02-3588 C/W, 2004 WL 2360159 at *1 (E.D. La. Oct. 19, 2004) (unpublished decision), the Court concludes that a party's failure to properly or timely object "does not result in an automatic waiver. Rather, a waiver is a serious sanction to be imposed in cases of 'unjustified delay, inexcusable conduct, bad faith or other flagrant violations.'" *Id*. at *2 (citing *Applied Sys., Inc. v. Northern Ins. Co. of New York*, No. 97 C 1565, 1997 WL 639235 (N.D. Ill. Oct. 7, 1997)). Moreover, it is appropriate to weigh the circumstances surrounding the objection to determine whether the privilege has been waived by the untimely production of a privilege log. *See Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (in determining whether a privilege should be waived when a party fails to timely provide a privilege log the court should consider certain enumerated factors and engage in a "holisitic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process"); *Sprint Communications Co. L.P. v. Vonage Holdings Corp.*, No. 05-2433-JWL-DJW, 2007 WL 1347754 (D. Kan. May 8, 2007) (declining to find waiver

**Memorandum Opinion and Order** 8

in the absence of evidence of unjustified delay in responding to discovery); *Public Serv. Co. of New Hampshire v. Portland Natural Gas*, 218 F.R.D. 361 (D.N.H. 2003) (stating that using FRCP 33(b)(4) to justify a waiver finding when the responding party invokes a privilege but initially fails to produce a privilege log with its discovery responses is unnecessarily harsh).

Here, the Court concludes that the failure to timely provide the privilege log was not the result of unjustified delay, inexcusable conduct, or bad fath. The defendants timely asserted the privilege, and while a log should have been contemporaneously provided, the parties were working to locate responsive documents and agree on the terms of a confidentiality order to protect the private information of others not parties to the lawsuit. Therefore, the Court declines to hold that GBS and Chamblee waived any applicable privileges by their failure to produce privilege logs contemporaneously with their responses to the Trustee's discovery requests.

Next, the Trustee argues that there is no evidence in the record to support the existence of an attorney-client relationship between Chamblee and GBS. An attorney-client relationship may be expressly created by contract or implied by the actions of the parties. *Sutton v. Estate of McCormick*, 47 S.W.3d 179 (Tex. App. – Corpus Christi 2001). For the relationship to be established, "the parties must explicitly or by their conduct manifest an intention to create it. To determine whether there was a meeting of the minds, we use an objective standard examining what the parties said and did and do not look at their subjective states of mind." *Id*. at 182.

Here, the Court agrees with the Trustee and concludes that Chamblee and GBS have not met their burden to establish the existence of an attorney-client relationship between them such that the

attorney-client privilege would apply to protect their communications from disclosure.[3] This is so for several reasons. First, counsel for the defendants admitted at the hearing that there was no formal retention agreement between Chamblee and GBS. Second, neither Chamblee nor GBS produced *any* evidence at the hearing to support their claim that Chamblee was acting as GBS's attorney. In short, based upon the failure of the defendants to introduce *any* evidence at the hearing on the Motion, the Court is unable to conclude that an attorney-client relationship existed between them.

Both GBS and Chamblee also make reference to the "tripartite relationship" which exists between an insurer, its insured and defense counsel hired by the insurer to defend the insured as part of its privilege claim.[4] However, the Court notes that GBS is neither insurer nor insured. Rather, the Debtor's insurer was Kemper; the Debtor was the insured. Pursuant to an Order entered on April 2, 2004, GBS was acting as "Third-Party Administrator," administering a court-approved alternative dispute resolution procedure for the benefit of the Trustee with respect to tort claims filed against the estate. There is no evidence before the Court to suggest that Chamblee was acting as counsel for GBS, as GBS appears to argue. Even if GBS is correct that the cases discussing the tripartite relationship between insured, insurer and defense counsel are applicable, then Chamblee would have been acting as counsel for either Kemper or the Debtor; GBS has not cited any cases stating that the attorney hired by an insurer to handle an insured's defense also acts as counsel for *agents* of the

---

[3] All of the documents on both privilege logs are communications between Chamblee and GBS. Kemper representatives also appear in some of the e-mail chains. The Court notes that some of the documents withheld by GBS are identical to some of the documents withheld by Chamblee. For example, the documents Bates-stamped by Chamblee as "CR PRIV 000015-000019 are the identical documents which GBS has Bates-stamped as GBS PRIV 000001-000004 and 000007, and both defendants have withheld those documents as privileged communications.

[4] Chamblee argued that the existence of this "tripartite relationship" supported its claim of attorney-client privilege as between itself and GBS in its initial response to the Motion. GBS made this same argument in its post-hearing brief, and both parties argued at the hearing that there was an attorney-client relationship between them.

insurer or the insured. In fact, GBS's own post-hearing brief describes Chamblee as "counsel for the insurance carrier/insured." *See* Third Party Def.'s Br. In Supp. Of Gallagher Bassett Services, Inc.'s Privilege Log, p. 6.

Moreover, the cases that GBS cites that discuss the tripartite relationship between the insured, insurer and defense counsel appear to conclude that when push comes to shove and a conflict develops between the insured and the insurer, counsel's ultimate duty is to the insured, and the insured (here, the Trustee) is the ultimate client. *Employers Cas. Co. v. Tilley*, 496 S.W.2d 552 (Tex. 1973); *see also Bradt v. West*, 892 S.W.2d 56, 77 (Tex. App. – Houston [1 Dist.] 1994) (stating that there is no attorney-client relationship between an insurer and an attorney hired by the insurer just to provide a defense to the insured).[5] Accordingly, the Court concludes that Chamblee and GBS have not satisfied their burden of proof with respect to the assertion of an attorney-client privilege that would protect the withheld documents from production.

Finally, even if the Court were to conclude that the defendants have satisfied their burden to establish the existence of the attorney-client relationship such that the attorney-client privilege would protect communications between them, the Court notes that some of the documents submitted for *in camera* review would clearly not be privileged in any event. For example, CR PRIV 000001-000014 is a fax from Caroline Spencer at Chamblee to Ray Camarillo at GBS, which states in full: "Mr. Camarillo: Attached are the Summons and Complaint that David Pacione discussed with you

---

[5] As noted earlier, the evidentiary record on the Motion is essentially non-existent. The Court reaches no conclusion on the merits as to who hired Chamblee or who was/is responsible for the payment of its fees. At the hearing on the Motion, counsel for GBS argued (but did not provide evidentiary support for that argument) that there is a contractual relationship between Kemper and GBS, but no contractual relationship between the Debtor and GBS. The Court expresses no opinion as to how the Order entered on April 1, 2004 with respect to the alternative dispute resolution procedures may alter these relationships, if at all. The Court merely holds that with respect to the Motion, GBS and Chamblee have not satisfied their burden on the claim of attorney-client privilege.

**Memorandum Opinion and Order**                                                                                                 **11**

today. Caroline Spencer, Legal Assistant." What follows this fax cover sheet is a copy of the summons, adversary proceeding cover sheet, and complaint in this adversary proceeding. These are publicly-available documents. "It goes without saying that documents do not become cloaked with the lawyer-client privilege merely by the fact of their being passed from client to lawyer." *U.S. v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997).

Similarly, document CR PRIV 000015 is a fax from a GBS employee to an attorney at Chamblee, which states "[a]s we discussed I think this is the letter Randy is talking about. After you've had a chance to review let me know what you think. Try to have a good weekend. Becky." Attached as CR PRIV 000016 through 000019 is a letter from Darrell G. Adkerson at Adkerson, Hauder & Bezney, P.C. to GBS (this letter and fax are also identified as GBS PRIV 000001-000004 and GBS 000007). While the document might contain information privileged as a result of an attorney-client relationship between Adkerson, Hauder & Bezney, P.C. and GBS, GBS has neither asserted that claim nor provided any evidence with respect to the relationship between the Adkerson, Hauder firm and GBS.[6]

The documents identified as CR PRIV 000026 and 000027 are simply two fax cover sheets from Chamblee to GBS, stating "enclosed please find the documentation you requested from David Pacione." The Court is at a loss to understand how this communication from lawyer to client could be based on, or disclose, confidential information provided by the client or contain advice or the opinions of the attorney. *United States v. Neal*, 27 F.3d 1035, 1048 (5th Cir. 1994); *Aspex Eyewear, Inc. v. E'Lite Optik, Inc.*, No. Civ.A.3:98-CV-2996-D, 2002 WL 1592606 (N.D. Tex. July 17, 2002)

---

[6] Counsel for GBS argued, but did not produce evidence supporting its argument, that the Adkerson, Hauder firm provided it with a legal opinion as to GBS's authority to handle claims under the ADR order.

**Memorandum Opinion and Order** 12

(unpublished disposition).

Finally, the document identified as CR PRIV 000030 is described on the privilege log as "adjuster's notes," and that is what it appears to be. Other than the fact that it was apparently in Chamblee's files, there is nothing in the record to suggest that this document was communicated to anyone at Chamblee in a confidential manner for the purpose of seeking legal advice.

So, even if the defendants had established the existence of an attorney-client relationship between them, the foregoing documents would still not be protected attorney-client communications.

### B.  Work-Product Doctrine

GBS and Chamblee assert that the document they identified as GBS PRIV 000008-000013 and CR PRIV 000020-000025, respectively, was created after October 25, 2005, which was the date that the Trustee demanded that Chamblee stop working and return "all improperly transferred estate property to the Trustee." Amended Complaint, ¶ 19. They assert that the document was therefore prepared in anticipation of litigation and need not be disclosed absent the Trustee making the showing required by Rule 26(b)(3). The Court is satisfied from its *in camera* review of the document itself that it was created in anticipation of litigation.

The Trustee asserts that the date of the document is irrelevant, although he concedes that litigation was virtually certain as of October, 2005.[7] Instead, the Trustee focuses on the nomenclature "attorney work product" and language in some cases stating that Rule 26 protects "work product revealing the attorney's mental processes," *see, e.g. Upjohn Co. v. U.S.*, 449 U.S. 383, 399 (1981),

---

[7] The Trustee is correct that the actual date is likely irrelevant. Under Fifth Circuit precedent, litigation need not necessarily be imminent to protect documents created in anticipation thereof, "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586 (5th Cir. 2000).

**Memorandum Opinion and Order**                                                                                                                       13

and asserts that since there is no evidence that GBS hired Chamblee to be its attorney, the doctrine does not apply.

The Trustee's view of Rule 26(b)(3) is too narrow. Under the express terms of Rule 26(b)(3), documents prepared "by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)" are protected. Case law confirms that the work-product doctrine extends beyond documents prepared by a party's attorney. *Kansas City Southern Ry. Co. v. Nichols Const. Co.*, No. CIVA 05-1182, 2007 WL 2461014 (E.D. La. Aug. 27, 2007) (the work-product doctrine is not limited to documents prepared by an attorney); *Flashmark Technologies LLC v. GTECH Corp.*, No. CIVA 206-CV-205, 2007 WL 2264765 (E.D. Tex. August 6, 2007) (upholding claim of work-product privilege as to documents created by a named plaintiff to the suit); *Clover Staffing, LLC v. Johnson Controls World Serv. Inc.*, 238 F.R.D. 576, 579 (S.D. Tex. 2006) (to qualify for work-product protection, a document must be created in anticipation of litigation by a party or his agent); *United Investors Life Ins. Co. v. Nationwide Life Ins. Co.*, 233 F.R.D. 483 (N.D. Miss. 2006) (the doctrine protects documents prepared by a party's agent just as it would a party's attorney).

The document identified as GBS PRIV 000008-000013 and CR PRIV 000020-000025 was prepared by Chamblee, a named defendant and therefore a party. The Court's *in camera* review of the document satisfies the Court that it was prepared in anticipation of litigation. It is therefore protected from disclosure absent the Trustee making the showing required by Rule 26(b)(3). While neither GBS nor Chamblee have established an attorney-client relationship between them at this juncture, the Trustee himself alleges that GBS hired Chamblee, and thus Chamblee was acting as, at the very least, GBS's representative. Therefore, the Court concludes that this document, while not

protected by the attorney-client privilege, is protected from disclosure by the work-product doctrine as codified in Rule 26(b)(3).

The only other documents that Chamblee claims are protected by the work-product doctrine (as they were created after October 25, 2005) are CR PRIV 000001-000014 and CR PRIV 000026-000027. CR PRIV 000001-000014 is a copy of the summons, adversary proceeding cover sheet, and complaint in this adversary proceeding, and a fax cover sheet from Chamblee transmitting them to GBS. The Court is at a loss to understand why Chamblee asserts that these documents are protected from disclosure or how the work-product doctrine would apply to them at all. Similarly, CR PRIV 000026-000027 are two copies of a fax cover sheet from Chamblee to GBS. Neither GBS nor Chamblee have established that these documents were created in anticipation of litigation. Accordingly, neither is protected by the work-product doctrine.

**IV.  Conclusion**

Because no evidence was offered by the defendants at the hearing on the Motion, the Court is unable to conclude that Chamblee was acting as GBS's attorney during the relevant time periods. In other words, as relevant here, the defendants have failed to establish the existence of an attorney-client relationship between them. Therefore, all of the documents withheld from production on the basis of attorney-client privilege must be produced to the Trustee immediately.

However, the document identified as GBS PRIV 000008-000013 and CR PRIV 000020-000025 is protected from disclosure by the work-product doctrine in accordance with Fed. R. Civ. P. 26(b)(3). All other documents withheld from production on the basis of the work-product doctrine must be produced to the Trustee immediately.

Accordingly, the Motion is granted in part and denied in part.

**SO ORDERED.**

**# # # End of Memorandum Opinion and Order # # #**