

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

Signed June 17, 2008          **United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 7** |
| | § | |
| **TIC UNITED CORP.,** | § | **CASE NO.: 00-37234-BJH-7** |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |
| **JOHN H. LITZLER, CHAPTER 7** | § | |
| **TRUSTEE FOR THE ESTATE OF** | § | |
| **TIC UNITED CORP.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 06-3261** |
| | § | |
| **CHAMBLEE & RYAN, P.C., and** | § | |
| **GALLAGHER BASSETT SERVICES, INC.** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a motion for summary judgment (the "Summary Judgment Motion" or the "Motion") brought by defendant Chamblee & Ryan, P.C. ("Chamblee & Ryan") and joined in by defendant Gallagher Bassett Services, Inc. ("Gallagher Bassett," together with Chamblee & Ryan, the "Defendants"). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A)&(E). This Court has jurisdiction to decide the Motion pursuant to 28 U.S.C. §§ 1334. For the reasons explained below, the Court grants the Motion.

## I.     Factual Background

The plaintiff in this case is the Chapter 7 trustee (the "Trustee") for the bankruptcy estate of TIC United Corp. ("TIC").[1] Prior to its bankruptcy filing, TIC was a trucking company that was exposed to liability for personal-injury and related claims. Plaintiff's Amended Complaint ("Amended Complaint"), Docket No. 32, ¶ 10. At certain times both before and after TIC's bankruptcy filing, TIC was insured by Lumbermens Mutual Casualty Company, a unit of Kemper Insurance Company ("Kemper"). *Id.* at ¶ 11. In order to resolve the numerous tort claims against TIC fairly and expeditiously, this Court ordered a mandatory alternative-dispute-resolution procedure for tort claimants. Order Granting Trustee's Motion for Approval of Mandatory Alternative Dispute Resolution Procedure (the "ADR Order"), Docket No. 2982 in the Underlying Case.

---

[1]TIC filed Chapter 11 bankruptcy on November 7, 2000. Voluntary Petition, Docket No. 1 in *In re TIC United Corp.*, Case No. 00-37234-BJH-7 (the "Underlying Case"). TIC moved to convert the case to Chapter 7 on February 28, 2003. Motion to Convert Chapter 11 Case to a Chapter 7 Case Pursuant to 11 U.S.C. § 1112(a), Docket No. 2199 in the Underlying Case. This Court converted the case to Chapter 7 by Order entered on March 4, 2003. Order Converting Chapter 11 Case to a Chapter 7 Case Pursuant to 11 U.S.C. § 1112(a), Docket No. 2202 in the Underlying Case.

## A.    The Tort Claims Fund

According to the Trustee, (i) although TIC was insured by Kemper, that insurance covered only liability for amounts in excess of TIC's self-insurance,[2] Amended Complaint ¶ 11; (ii) Kemper was to pay out the entire amount of the tort claims and then TIC would reimburse Kemper for the amount of its self-insurance, *Id.* at ¶ 14; (iii) TIC's self-insurance obligations to Kemper were secured by a fund (the "Tort Claims Fund") consisting of (a) a transfer of $1.3 million (the "Cash") from TIC to Kemper;[3] and (b) a letter of credit (the "Letter of Credit") purchased by the Trustee from JP Morgan Chase[4] ("Chase") for the benefit of Kemper, *Id.* at ¶ 15; and (iv) the Cash was quickly exhausted, leaving the Letter of Credit as Kemper's only remaining security in the Tort Claims Fund.[5] *Id.*

## B.    Gallagher Bassett and Chamblee & Ryan

According to the Trustee, after entry of the ADR Order, the Trustee met with third-party

---

[2]The Trustee alleges that TIC self-insured for auto liability and general liability up to $1 million per accident or occurrence or for workers' compensation liability up to $500,000 per accident or occurrence. Amended Complaint ¶ 14.

[3]The Trustee alleges that this transfer was made while TIC was a Chapter 11 debtor-in-possession. Amended Complaint ¶ 15.

[4] The Trustee apparently purchased an unconditional letter of credit from CitiCapital at the time TIC's bankruptcy case was converted from Chapter 11 to Chapter 7. Plaintiff's Summary Judgment Brief (the "Trustee's Brief"), Docket No. 101, ¶ 7. That letter of credit was later replaced by the unconditional, irrevocable Letter of Credit issued by Chase in the sum of $4,309,089.22. Plaintiff's Appendix in Support of His Summary Judgment Response ("Trustee's Appendix"), Docket No. 102, Attachment 1, Exh. 1.

[5] There was apparently Cash in the Tort Claims Fund on April 2, 2004, the date the ADR Order was entered, because the ADR Order directed Kemper to apply Cash to allowed claims before it made further draws on the Letter of Credit. ADR Order p. 7. The Parties agree that there was no Cash in the Tort Claims Fund at the time Kemper drew down on the Letter of Credit to reimburse itself for the $6,027.77 at issue here, as described *infra*, p. 5.

administrator Gallagher Bassett[6] and agreed to a process in which Gallagher Bassett would review claims, report recommendations to the Trustee, and issue settlement checks. *Id.* at ¶ 16. According to the Trustee, the settlement checks were to be funded from the Cash, while it remained available, and then from the proceeds of the Letter of Credit. *Id.*

The Trustee alleges that he learned that Gallagher Bassett had retained a law firm, Chamblee & Ryan, to assist with the claims-review process approximately one year after the entry of the ADR Order. *Id.* at ¶ 17; Summary Judgment Motion, Docket No. 95, ¶ 18. The Trustee alleges that he informed the Defendants that he did not agree to the transfer of any of TIC's claim files to Chamblee & Ryan. Amended Complaint ¶ 17.

According to the Trustee, notwithstanding the Trustee's opposition, Gallagher Bassett transferred numerous claim files to Chamblee & Ryan for review. *Id.* at ¶ 18. As relevant here, Chamblee & Ryan billed Gallagher Bassett $78,615.79 for reviewing the TIC claim files. The Medleh Group, a copy service, also billed $12,494.39 to copy these files. Summary Judgment Motion ¶ 26 & n. 5. Gallagher Bassett paid these amounts, aggregating $91,110.18 (the "Total Amount")[7] from funds paid to it by Kemper, as explained further below. Specifically, Gallagher Bassett paid Chamblee & Ryan by checks bearing the legend "Gallagher Bassett Services Inc. For Lumberman's Mutual." Appendix to Chamblee & Ryan P.C.'s Motion for Summary Judgment ("Chamblee & Ryan Appendix"), Docket No. 96, Exh. B pp. 2–3.

---

[6] The ADR Order required that the Trustee and Kemper agree upon a third-party administrator to perform certain functions. ADR Order p. 6; Mandatory Alternative Dispute Resolution Procedure for Damages Claims (attached to the ADR Order) p. 5.

[7] The Trustee initially alleged that Chamblee & Ryan's bills totaled $99,515.22 and that The Medleh Group was paid $18,785.31, for a total of $118,300.53. Amended Complaint ¶¶ 18–19. However, in a letter between the Trustee and Kemper dated September 24, 2007, the Trustee states that the amounts paid were $78,615.79 and $12,494.39 respectively, for a total of $91,110.18. Trustee's Appendix, Attachment 1, Exh. 5. The Parties agreed at the May 29, 2008 hearing on the Summary Judgment Motion (the "Hearing") that the total amount in dispute here is $91,110.18. Audiotape: Hearing conducted 5/29/08 at 9:05:41 – 0:06:02, 9:15:58 – 9:17:55.

C.     **Transfer of Kemper Funds**

Kemper paid Gallagher Bassett $6,027.77 from its own funds, and then Kemper drew down on the Letter of Credit to reimburse itself for this amount (the "Reimbursed Amount").[8]  Laurie Knudson ("Knudson"), the Kemper employee in charge of the TIC account, testified in her deposition that Kemper wired the remaining $85,082.41 to Gallagher Bassett from Kemper's own funds.[9]  Chamblee & Ryan Appendix, Exh. A pp. 39, 42.  Before Kemper could draw down on the Letter of Credit to reimburse itself for the $85,082.41, the Trustee sought, and this Court entered (on October 31, 2005), a temporary restraining order preventing Kemper from drawing down the Letter of Credit to reimburse itself for this amount pending a further hearing.[10]  Trustee's Brief ¶ 12; Letter Agreement p. 1; Order Granting Emergency Motion for Temporary Restraining Order and for Preliminary Declaratory And/Or Injunctive Relief and Memorandum of Law In Support (the "TRO"), Docket No. 3307 in the Underlying Case.  To date, Kemper has not been reimbursed for

---

[8]The Cash portion of the Tort Claims Fund was already exhausted.  *See supra*, fn. 5.

[9]The Court is troubled by certain statements the Trustee made in his affidavit in opposition to the Summary Judgment Motion.  Trustee's Appendix, Attachment 1.  For example, the Trustee stated that "[o]nly $6,027.77 had been drawn from the Estate cash on deposit with Chase and transferred through Kemper to the Defendants.  The additional $85,082.41 has been advanced by Kemper from the TIC tort claims fund it maintained."  *Id.* at ¶ 13.  The Trustee also stated that "Kemper was not spending its own money on TIC matters . . . [I]f [the Defendants] do not return [the $91,110.18], the assets of the Estate have been reduced by that same amount for no known benefit to the Estate."  *Id.* at ¶ 14.

In light of the admissions made by the Trustee's counsel at the Hearing, it appears that the Trustee's affidavit was carefully crafted to attempt to obfuscate the facts and mislead the Court.  Because the Trustee's affidavit was confusing (in light of the other summary-judgment evidence), the Court took pains to clarify at the Hearing whether Kemper paid Gallagher Bassett with its own funds or estate funds.  In response to the Court's questions, counsel for the Trustee admitted that Kemper paid Gallagher Bassett with its own funds from which Gallagher Bassett then paid Chamblee & Ryan and The Medleh Group.  Audiotape: Hearing conducted 5/29/08 at 9:15:37 AM – 9:19:31 AM.  Of course, as the Trustee's counsel further stated at the Hearing, Kemper paid Gallagher Bassett the $91,110.18 at issue here fully expecting to draw down on the Letter of Credit to reimburse itself.

The Trustee's Brief and the September 27, 2007 letter between the Trustee and Kemper also make it clear that Kemper paid Gallagher Bassett the Total Amount out of its own funds.  Trustee's Brief ¶ 12; Trustee's Appendix, Exh. 5 p. 1.

[10]No further hearing has been sought by either the Trustee or Kemper.

**Memorandum Opinion and Order**                                                                                     **Page 5**

this $85,082.41 (the "Unreimbursed Amount").  Chamblee & Ryan Appendix, Exh. A pp. 43–44.

### D.    Letter Agreement Between Kemper and the Trustee

In a letter dated September 24, 2007, and signed by both the Trustee and Kemper (the "Letter Agreement"), the Trustee agreed that he would place any recovery from the Defendants (up to $85,082.41) in the estate account that secures the Trustee's reimbursement obligations to Chase in connection with Chase's issuance of the Letter of Credit, and that Kemper could draw down the Letter of Credit in the amount of the recovery (up to $85,082.41).  Letter Agreement p. 1.  In the Letter Agreement, Kemper also assigned to the Trustee "any separate, additional or independent rights which [Kemper] may have to recover the Unreimbursed Amount of $85,082.45 [sic]."[11]  *Id.*

## II.    Procedural Background

As noted previously, (i) TIC filed its Chapter 11 bankruptcy petition on November 7, 2000; (ii) this Court converted the case to Chapter 7 by Order entered on March 4, 2003; (iii) the ADR Order was entered on April 2, 2004; and (iv) the TRO prohibiting Kemper from further drawing down the Letter of Credit was entered on October 31, 2005.

### A.    Amended Complaint

The Trustee initiated this adversary proceeding on March 29, 2006.  In his Amended Complaint, the Trustee states five claims: (1) turnover of property of the estate from Chamblee & Ryan pursuant to 11 U.S.C. § 542; (2) turnover of property of the estate from Gallagher Bassett

---

[11]While the Trustee's counsel stated at the Hearing that he understood this provision to mean that Kemper assigned its rights to collect from the Defendants to the Trustee, counsel for Chamblee & Ryan argued that the language of the Letter Agreement is not so limited and precludes Kemper from ever attempting to draw down the Letter of Credit for the Unreimbursed Amount (unless the Trustee is successful in recovering the Funds from the Defendants here) because the "right" to draw down the Letter of Credit for this amount has been assigned to the Trustee.  Audiotape: Hearing conducted 5/29/08 at 9:19:32 AM – 9:22:49 AM.

pursuant to 11 U.S.C. § 542; (3) avoidance of post-petition transfers to Gallagher Basset pursuant to 11 U.S.C. § 549(a); (4) avoidance of post-petition transfers to Chamblee & Ryan pursuant to 11 U.S.C. § 549(a); and (5) damages for willful violation of the automatic stay against Chamblee & Ryan—for improperly retaining property of the estate—and against Gallagher Bassett—for improperly transferring estate property. Amended Complaint ¶¶ 24–56.

### B.    Summary Judgment Motion

In the Summary Judgment Motion and accompanying brief, Chamblee & Ryan correctly observes that the Trustee cannot recover on any of his claims unless property of the estate was transferred to, and/or improperly retained by, the Defendants. Motion ¶ 5; Chamblee & Ryan, P.C.'s Brief in Support of Motion for Summary Judgment (the "Chamblee & Ryan Brief"), Docket No. 98, ¶ 7.

In support of its argument that the Trustee cannot prevail here because property of the estate was not transferred to either Defendant, Chamblee & Ryan points to the deposition testimony of Knudson. Chamblee & Ryan Appendix, Exh. A. Knudson testified that Kemper wired funds to Gallagher Bassett "based upon the report of all the checks [Gallagher Bassett] had sent" and then Kemper would reimburse itself by drawing on the Letter of Credit. Chamblee & Ryan Appendix, Exh. A p. 39. According to Chamblee & Ryan, Knudson's testimony makes it clear that the wired funds were Kemper funds, not estate funds, when she further testified that Kemper remained "out of pocket" for $85,082.41 paid to Gallagher Bassett because of the issuance of the TRO, which prevented Kemper from reimbursing itself from the Letter of Credit. Chamblee & Ryan Appendix, Exh. A pp. 42–44. It is undisputed that Kemper did reimburse itself from the Letter of Credit for the $6,027.77 it paid to Gallagher Bassett prior to the issuance of the TRO.

Chamblee & Ryan also relies upon Fifth Circuit precedent holding that letters of credit and proceeds from letters of credit are not property of the estate. Chamblee & Ryan Brief ¶ 10 (quoting *EOP-Colonnade of Dallas Ltd. v. Faulkner (In re Stonebridge Technologies, Inc.)* [hereinafter *Stonebridge*], 430 F.3d 260, 269 (5th Cir. 2005)). According to Chamblee & Ryan, "[i]f proceeds from a letter of credit are not property of the estate, then proceeds paid by a third-party in anticipation of another third-party drawing under a letter of credit, are certainly not property of the estate." *Id.* at ¶ 11. In other words, according to Chamblee & Ryan, the Trustee cannot prevail here because the Defendants received *Kemper* funds, not TIC bankruptcy-estate funds—*i.e.*, not property of the estate. Moreover, according to Chamblee & Ryan, even if the Trustee sued Kemper (which he has not done), the Trustee would not be able to recover the $6,027.71 Kemper drew down from the Letter of Credit to reimburse itself (for paying that amount to Gallagher Bassett) because funds drawn down on the Letter of Credit by Kemper were *Chase* funds, not estate funds. Because §§ 542, 549, and 362 each require property of the estate to have been received and/or retained by the Defendants, and no such property is involved here, Chamblee & Ryan contends that the Trustee cannot prevail on any of his claims as a matter of law. *Id.* at ¶ 14.

Alternatively, Chamblee & Ryan contends that even if the Trustee could avoid the transfer of the Unreimbursed Amount under § 549, he cannot recover it for the "benefit of the estate" because he has agreed to pay this amount to Kemper in the Letter Agreement. Thus, according to Chamblee & Ryan, since the beneficiary of that potential recovery is Kemper, not the estate, the Trustee is precluded from any recovery here in accordance with § 550(a). Chamblee & Ryan Brief ¶ 17.

### C.    Trustee's Summary Judgment Response

In the Trustee's Brief, the Trustee contends that the funds transferred from Gallagher Bassett to Chamblee & Ryan and The Medleh Group are recoverable here in accordance with § 549 because the practical effect of the various transfers resulted (or will result) in diminution to the estate. Trustee's Brief pp. 6–10. In support of this argument, the Trustee relies upon two preference cases, concluding that "there is no basis or reason for a different definition of property of the estate applying to post-petition transfers under § 549." *Id.* at p. 9. Without citation to further authority, the Trustee concludes that "[f]unds advanced by third parties on behalf of the debtor, that result in the diminution of the estate, involve transfers of property of the estate and can be avoided." *Id.* at p. 9. In addition, the Trustee points to case law holding that excess proceeds of a letter of credit are property of the estate. *Id.* (quoting *Phar-Mor, Inc. v. Florida Self-Insurers Guaranty Ass'n, Inc. (In re Phar-Mor, Inc.)* [hereinafter *Phar-Mor*], 344 B.R. 852, 855 (Bankr. N.D. Ohio 2005)). According to the Trustee, to the extent this Court reverses the transfers, there will be excess proceeds in the Letter of Credit that are property of the estate. Trustee's Brief pp. 7–8.

Moreover, with respect to his wilful-violation-of-the-automatic-stay claim, the Trustee contends that the $6,027.56 paid to the Defendants "are clearly Estate assets," because they "completed the financial process." *Id.* at p. 10. In other words, according to the Trustee, because Kemper reimbursed itself out of the Letter of Credit for this amount, which resulted in Chase collecting the same amount from the account securing the Trustee's repayment obligations to Chase under the "Security Agreement – Deposits" signed by the Trustee on October 14, 2004 (the "Security Agreement"), Trustee's Appendix, Exh. 4, the $6,027.56 paid by Kemper to Gallagher Bassett constitutes "property of the estate." With respect to the Unreimbursed Amount—*i.e.*, the $85,082.41 paid by Kemper to Gallagher Bassett, for which Kemper has not been reimbursed

because of the issuance of the TRO, the Trustee asserts that estate property is also at issue "because of the financial arrangements in place under the Kemper Insurance and the Chase Letter of Credit." Trustee's Brief p. 10. In other words, according to the Trustee, because Kemper may reimburse itself out of the Letter of Credit, "the Defendants have acted 'to obtain possession of' [property of the estate], have taken [property] 'from the Estate', and . . . continue to this day 'to exercise control over' [property of the estate]." *Id*.

Finally,[12] the Trustee argues that even if the funds transferred to the Defendants were not property of the estate, this Court should use its inherent authority under § 105(a) of the Bankruptcy Code to enforce the ADR Order and require the Defendants to return the Total Amount. *Id*. at pp. 13–14.

## III. Legal Analysis and Authority

### A. Standard for Summary Judgment Motion

Summary judgment is appropriate where the pleadings, affidavits, and other summary-judgment evidence reveal no genuine issue of material fact and demonstrate that the movant is entitled to judgment as a matter of law. FED. R. CIV. PROC. 56(c); FED. R. BANKR. PROC. 7056. The court reviewing the facts must draw inferences therefrom most favorably to the party opposing summary judgment. *Miller v. Delta Air Lines, Inc. (In re Air Crash at Dallas/Forth Worth Airport on Aug. 2, 1985)*, 861 F.2d 814, 815 (5th Cir. 1988).

### B. Property of the Estate

Because property of the estate must have been transferred to the Defendants before the Trustee can recover on any of his claims, the first step in our analysis is to determine whether the

---

[12]The Trustee does not respond to the Defendants' arguments regarding the turnover claims (Counts 1 and 2 as pled in the Amended Complaint) in the Trustee's Brief.

Defendants have received property of the estate. 11 U.S.C. §542(a); 11 U.S.C. §549(a); 11 U.S.C. § 362(a)(3), (4). Turning first to the Reimbursed Amount—*i.e.*, $6,027.77, it is undisputed that Kemper paid this amount to Gallagher Bassett from its own funds and then reimbursed itself by drawing down on the Letter of Credit. Clearly, Kemper's funds are not property of the TIC bankruptcy estate. Moreover, Kemper did not reimburse itself from property of the TIC bankruptcy estate when it drew down the Letter of Credit. The Fifth Circuit has stated that "[i]t is well-established in this circuit that letters of credit and the proceeds therefrom are not property of the debtor's bankruptcy estate. Insofar as letters of credit embody obligations between the issuer and beneficiary, such contractual rights and duties are entirely separate from the debtor's estate." *In re Stonebridge*, 430 F.3d 260, 269 (5th Cir. 2005) (citing *Kellogg v. Blue Quail Energy, Inc. (Matter of Compton Corp.)*, 831 F.2d 586, 589 (5th Cir. 1987) ("When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued.")). Thus, when Kemper drew down on the Letter of Credit, it was paid from Chase's funds, not TIC bankruptcy-estate funds. Accordingly, at this point in the Court's analysis, summary judgement in favor of the Defendants is required because the Defendants did not receive, and have not improperly retained, property of the TIC bankruptcy estate.

The Trustee tries to avoid this outcome by advancing two arguments: (1) the excess-proceeds-in-the-Letter-of-Credit argument, and (2) the diminution-to-the-estate/indirect-transfer argument. In support of both of these arguments, the Trustee relies upon the entirety of the financial arrangements in place under the ADR Order and essentially collapses the separate transactions[13] to look at the practical effect of all of them collectively on the estate.

---

[13] *I.e.*, Kemper paid its funds to Gallagher Bassett, Kemper then reimbursed itself from the Letter of Credit, which enabled Chase to collect from the collateral pledged by the Trustee to secure the Trustee's repayment obligations to Chase under the Security Agreement.

### 1.      The Excess-Proceeds Argument

While the Trustee admits that proceeds of a letter of credit are not property of the estate, he notes that excess proceeds drawn under a letter of credit are property of the estate.  Trustee's Brief pp. 7–8 (quoting *Phar-Mor*, 344 B.R. 852, 855 (Bankr. N.D. Ohio 2005)).  The Trustee is correct; to the extent a letter of credit is drawn down in an amount in excess of that which the beneficiary of the letter of credit is legally entitled to receive, case law permits the recovery of those *wrongfully* drawn funds from the beneficiary for the benefit of the estate.

For example, in *Phar-Mor*, the case the Trustee relies on, a debtor filed a complaint to compel turnover of excess proceeds of a letter of credit that the debtor purchased.  344 B.R. at 852. The beneficiary of the letter of credit was responsible for paying out certain of the debtor's workers' compensation claims.  The beneficiary drew down the entire $800,000 letter of credit, but the beneficiary agreed that the most it would be required to pay out in claims was $400,000.  *Id.* at 855. The *Phar-Mor* court held that the letter of credit itself was not property of the estate; therefore the beneficiary could draw it down without violating the automatic stay.  *Id.*  However, the court distinguished between a dispute over the proceeds of a letter of credit and the letter of credit itself. Because the beneficiary was only entitled to retain proceeds sufficient to satisfy the debtor's workers' compensation claims under its agreement with the debtor, and had drawn down far more proceeds than the maximum amount of those claims, the *Phar-Mor* court concluded that the excess proceeds drawn down by the beneficiary were property of the estate subject to turnover.  *Id.*

In other words, the so-called independence doctrine, that excludes letters of credit and their proceeds from bankruptcy estates, protects only the relationship between the issuer of the letter of credit and the beneficiary of the letter of credit.  Once the beneficiary has received the proceeds, it can retain them only if the funds rightfully belong to the beneficiary under its underlying agreement

or contract with the purchaser of the letter of credit.  *See Demczyk v. Mutual Life Insurance Co. of New York (In re Graham Square, Inc.)*, 126 F.3d 823, 827–28 (6th Cir. 1997).

This is consistent with the Fifth Circuit's opinion in *Stonebridge*, which the Defendants cite for the principle that "letters of credit and the proceeds therefrom are not property of the debtor's bankruptcy estate."  Chamblee & Ryan Brief ¶ 10 (quoting 430 F.3d 260, 269 (5th Cir. 2005)). *Stonebridge* involved a debtor-lessee that purchased a letter of credit for the benefit of its lessor prepetition.  The lessor drew on the letter of credit post-petition.  The debtor asserted, *inter alia*, that the lessor had breached the lease by prematurely drawing on the letter of credit.  The *Stonebridge* court began its analysis by stating that letters of credit and proceeds therefrom are not property of the estate.  *Id.*  The court ultimately determined that the lessor was entitled to the full proceeds of the letter of credit, however, after looking to the lease itself and finding that the lessor was entitled to draw on the letter of credit because the debtor was in default under the terms of the lease.  *Id.* at 272.  Implicit in the Fifth Circuit's holding is that the lessor would not have been permitted to retain any proceeds in excess of those it was entitled to under its lease agreement with the debtor.

This Court is not persuaded that the excess-proceeds cases assist the Trustee here.  Those cases are factually inapposite.  Each of those cases involved a defendant that was the beneficiary of the letter of credit.  And in each of those cases, the court examined the underlying agreement between the debtor and the beneficiary of the letter of credit to determine whether there were any proceeds of the letter of credit that the beneficiary held improperly—*i.e.*, in breach of the agreement between the debtor and the beneficiary.

Here, the Trustee has not sued Kemper, the beneficiary of the Letter of Credit.  Moreover, the Trustee has never asserted that Kemper violated any underlying agreement between Kemper and the Trustee by drawing down the Letter of Credit to reimburse itself for the $6,027.77 Kemper paid

**Memorandum Opinion and Order**                                                                                   **Page 13**

to Gallagher Bassett. Moreover, even if the Defendants were the beneficiaries of the Letter of Credit (which they are not), the Trustee, unlike the plaintiffs in the excess-proceeds cases, brought no claim against them in the Amended Complaint for breaching an underlying agreement they had with the Trustee. In fact, there is no agreement between either of the Defendants and the Trustee. According to the Trustee, the document that governs the relationship between the Trustee and Gallagher Bassett is the ADR Order. There is no relationship between Chamblee & Ryan and the Trustee at all. Audiotape: Hearing conducted 5/29/08 at 9:11:23 – 9:13:30. While the Trustee contends that Gallagher Bassett's actions here are in violation of the ADR Order—*i.e.*, Gallagher Bassett had no right to retain Chamblee & Ryan to review claims and then pay Chamblee & Ryan, the truth is that the ADR Order is silent on those issues – *i.e.*, it neither authorizes nor prohibits such actions.

### 2.  Diminution-to-the-Estate/Indirect-Transfer Argument

Next, the Trustee attempts to avoid a summary judgment in the Defendants' favor by raising arguments about diminution to the estate and indirect transfers. Trustee's Brief pp. 8–10. These arguments only apply (at best) to the Trustee's improper-post-petition-transfer claims under § 549.[14] This is so for at least two reasons. First, the Trustee only makes these arguments in the context of his § 549 claims. Second, § 550(a)(1), which allows the Trustee to recover an improper post-petition transfer from the party "for whose benefit the transfer was made," does not apply to turnover actions under § 542 or to wilful violations of the stay under § 362. 11 U.S.C. § 550(a)(1).

However, as explained more fully below, there are several problems with the Trustee's § 549 claims (in addition to the fact that the funds actually received by the Defendants were Kemper funds, not TIC bankruptcy-estate funds). By way of background, § 549 allows the trustee to avoid a

---

[14]Counts 3 and 4 as pled in the Amended Complaint.

**Memorandum Opinion and Order**                                    **Page 14**

transfer of property of the estate that (i) occurs post-petition, and (ii) as relevant here, is not authorized by the Bankruptcy Code or by the Court. 11 U.S.C. § 549(a). It is undisputed that the Trustee deposited TIC cash (or certificates of deposit) with Chase to secure his repayment obligations to Chase under the Security Agreement. In fact, as relevant here, the TIC cash or certificates of deposit were the only "property of the estate" that was transferred in connection with the implementation of the ADR Order. This transfer occurred, for purposes of § 549, when the Trustee signed the Security Agreement on October 14, 2004, and pledged the cash or certificates of deposit to Chase in order to secure the Trustee's repayment obligations to Chase in the event the Letter of Credit was drawn by Kemper. *Kellogg v. Blue Quail Energy, Inc. (Matter of Compton Corp.)* [hereinafter *Blue Quail*], 831 F.2d 586, 591 (5th Cir. 1987) (holding that the transfer of the debtor's property occurs when the debtor grants a security interest, not when the issuer pays on the letter of credit). The Trustee has not alleged in the Amended Complaint, and does not contend now, that this transfer of estate funds to Chase was unauthorized. In fact, the Trustee fully intended to pledge estate funds to secure his repayment obligations to Chase in accordance with the Security Agreement. Because the Trustee was authorized to make this transfer of estate property to Chase, the Trustee's § 549(a) claim fails as a matter of law.

The second problem with the Trustee's analysis is that the party to whom the transfer was made was Chase, not the Defendants. Finally, the "entity for whose benefit such transfer was made"

was Kemper, the beneficiary of the Letter of Credit, not the Defendants.[15]  For any of these reasons, the Trustee's § 549 claims against the Defendants fail as a matter of law.

Faced with the difficult reality of the ADR structure he chose to implement,[16] the Trustee urges the Court to collapse the transactions in question and look only at the ultimate result for the estate.  Trustee's Brief p. 10.  ("If the Defendants do not return the subject $91,110.18 to the TIC tort claims fund, the Estate will have lost that amount of Estate assets.").  The Trustee asserts that the "proper inquiry in determining whether a transfer of assets is avoidable pursuant to § 549 is whether the transfer resulted in the diminution of the debtor's estate, not where the assets came from."[17]  *Id.* at 9.  The Trustee cites no authority for his conclusion in the context of § 549.  In fact, there is some case law to the contrary.  *Aalfs v. Wirum (In re Straightline Investments, Inc.)* [hereinafter *Straightline*], 525 F.3d 870 (9th Cir. 2008) (declining to expand the diminution-of-estate doctrine from §547 and §548 cases, and holding that absence of diminution to the estate would not cause a transfer otherwise avoidable under § 549 to stand); *Burns v. Shelton (In re Shelton)*

---

[15]While §550(a)(2) also allows a trustee to recover from "any immediate or mediate transferee of such initial transferee," it is of no help to the Trustee either.  Here, there was only one transferee of property of the TIC bankruptcy estate—*i.e.*, Chase, which transfer occurred when the estate's funds were pledged to secure the Trustee's repayment obligations to Chase under the Security Agreement.  *See Blue Quail*, 831 F.2d at 591 ("[T]he transfer of debtor's property takes place at the time the letter of credit is issued (when the security interest is granted) and received by the beneficiary, not at the time the issuer pays on the letter of credit.").  When Chase repaid itself by realizing on its collateral after Kemper drew down on the Letter of Credit, no transfer of estate property occurred.  And when Kemper drew down on the Letter of Credit, Chase paid Kemper out of Chase funds, not out of property of the TIC bankruptcy estate.  *Id.* at 589 ("When the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of its customer who caused the letter of credit to be issued.")

[16]At the Hearing, the Court asked counsel for the Trustee why the Trustee employed a letter-of-credit structure when the Trustee had enough cash on hand in the estate to simply transfer that cash to Kemper, who would, in turn, then use estate funds to pay Gallagher Bassett.  Counsel explained that he believed the Trustee chose this more complicated structure in order to earn interest on the estate's cash.  In other words, Kemper would not pay the Trustee interest on the estate's funds while being held by Kemper, so the Trustee put the estate's funds in certificates of deposit that would earn interest and then pledged those certificates to Chase to secure his repayment obligations under the Security Agreement.  Audiotape: Hearing conducted 5/29/08 at 9:32:50 AM – 9:33:32 AM.

[17]This is a somewhat unusual assertion in light of the actual language of § 549(a), which is explicitly concerned with "where the assets came from" (*i.e.* "property of the estate") and which shows no overt interest in whether the estate was diminished by the transfer or not.

**Memorandum Opinion and Order**                                                                    **Page 16**

[hereinafter *Shelton*], 331 B.R. 700, 702 (Bankr. W.D. Ky. 2005) (finding the defense that there was no diminution to the estate inapplicable to a § 549 post-petition transfer), *rev'd* 244 Fed.Appx. 634 (6th Cir.) (reversing on other grounds).

The Trustee relies upon two cases to support his conclusions: *George v. Argent Mortgage Co., LLC (In re Radbil)* [hereinafter *Radbil*], 364 B.R. 355, 357–58 (Bankr. E.D. Wis. 2007) and *Taunt v. Fidelity Bank of Michigan (In re Royal Golf Products Corp.)* [hereinafter *Golf Products*], 79 B.R. 695, 701 (Bankr. E.D. Mich. 1987). However, both cases are legally and factually distinguishable.

In *Radbil*, the debtor refinanced the mortgage on his home prepetition, trading one secured creditor for another secured creditor. 364 B.R. at 356. Because of a timing glitch in perfecting the refinanced mortgage, the trustee alleged that the transfer of the debtor's property to the refinancing lender—*i.e.*, the new lender's perfection of its lien, was a preference. The new lender argued that "'diminution of the estate' is a necessary element of a preference, and here the estate was not diminished by its late recording." *Id.* at 358. Analyzing the Seventh Circuit's prior decision in *Warsco v. Preferred Technical Group, Inc.*, 258 F.3d 557, 564 (7th Cir. 2001), a case also relied upon by the Trustee here, the *Radbil* court noted that "[w]hile the [Seventh Circuit] stated that it would 'consider' whether the transfer diminished the debtor's estate, it stopped short of saying that factor determined the outcome of a challenged transfer." *Id.* at 359.

In *Golf Products*, the debtor borrowed money from Fidelity; the loan was not secured by property of the debtor. 79 B.R. at 697. The loan was secured, however, by a letter of credit purchased by Francis McNath, a secured creditor of the debtor. *Id.* McNath's pre-existing security agreement with the debtor provided that any future advances he made to or for the debtor's benefit would result in a corresponding increase in his security interest in the debtor's assets. *Id.* at 699.

**Memorandum Opinion and Order**                                                                 **Page 17**

When the debtor was unable to pay Fidelity, Fidelity sought to draw down the letter of credit. *Id.* at 697. McNath intervened, however, to protect the stocks that secured the letter of credit, and paid $157,000 directly to Fidelity. *Id.* Due to McNath's pre-existing security agreement, this payment to Fidelity resulted in an automatic corresponding increase in the debtor's secured debt to McNath. *Id.* at 698. Because McNath's action resulted in a diminution to the estate for unsecured creditors, the *Golf Products* court held that the transfer could be avoided as a preference under § 547. *Id.* at 701.

Both of these cases are factually inapposite because neither of them involves proceeds drawn under a letter of credit.[18] As relevant here, when Kemper paid Gallagher Bassett, it had no claim against the TIC estate for reimbursement. Rather, under the structure put in place post-petition by the Trustee, it had a legal right to draw down on the Letter of Credit for reimbursement. When Chase paid Kemper, it did so out of its own funds, not property of the TIC bankruptcy estate. Moreover, when Chase realized on the collateral pledged previously by the Trustee, no improper post-petition transfer of the estate's property occurred. Chase had a legal right to realize on its collateral to repay itself for Kemper's draw on the Letter of Credit. The Court therefore rejects the Trustee's argument that the transfer of the funds is avoidable as an improper post-petition transfer of TIC bankruptcy-estate assets under § 549 because its ultimate result is diminution to the estate.

Closely related to the Trustee's diminution-to-the-estate argument is the Trustee's indirect-transfer argument. The Trustee notes that the Bankruptcy Code defines "transfer" to include an "indirect . . . disposing of or parting with—(i) property; or (ii) an interest in property." Trustee's Brief p. 8 (quoting 11 U.S.C. § 101(54)(D)). The Trustee urges that there is no real difference

---

[18]While there was a letter of credit present in *Golf Products*, it became irrelevant analytically when the purchaser paid the beneficiary directly.

between a direct transfer from the Trustee to Gallagher Bassett and the "indirect transfer" that he claims occurred here. Trustee's Brief p. 8.

However, the cases cited in the Trustee's Brief for this premise suffer from the same problems as do the Trustee's diminution-to-the-estate cases. The Trustee extracts from these cases statements to the effect that third-party transfers to a creditor on behalf of the debtor—"indirect transfers"—may be avoidable as preferences. *Id.* (quoting *Warsco v. Preferred Technical Group, Inc.*, 258 F.3d 557, 564 (7th Cir. 2001); *MMR Holding Corp. v. C & C Consultants, Inc. (In re MMR Holding Corp.)*, 203 B.R. 605, 610 (Bankr. M.D. La. 1996)). The Court agrees that this outcome is possible if the right facts are present. But, once again, the Trustee's cases addressed § 547 preference claims that did not involve letters of credit.[19]

The one indirect-transfer case the Trustee cites that deals meaningfully with a letter-of-credit transaction is *Blue Quail*, 831 F.2d 586 (5th Cir. 1987) (modified on grounds not relevant here, 835 F.2d 685 (1988)).[20] In *Blue Quail*, the debtor purchased a letter of credit prepetition to secure an unsecured antecedent trade debt. *Id.* at 589. An involuntary petition was filed against the debtor the day after the bank issued the letter of credit. *Id.* Later, the trustee brought a § 547 preference action against the creditor-beneficiary of the letter of credit. *Id.*

The *Blue Quail* court reiterated the well-established rule that "a letter of credit and the proceeds therefrom are not property of the debtor's estate under 11 U.S.C. § 541." *Id.* at 589. There, the trustee was not seeking to set aside the post-petition payments from the issuer to the

---

[19]The *MMR Holding* court does state that an indirect transfer "would probably be avoidable pursuant to § 549." 203 B.R. at 610. However, this statement is of no legal consequence here because it was dictum and the court did not analyze a letter-of-credit arrangement.

[20]The Trustee did not cite this case in the Trustee's Brief. Rather, he discussed it at the Hearing. Audiotape: Hearing conducted 5/29/08 at 9:55:43 – 9:56:13.

**Memorandum Opinion and Order**                                                                 **Page 19**

beneficiary of the letter of credit, however. Rather, the trustee claimed that the debtor's transfer of additional collateral to the issuer of the letter of credit resulted in an indirect preference to the beneficiary of the letter of credit, because that beneficiary was a prepetition unsecured creditor of the debtor who received more by drawing down on the letter of credit than other prepetition unsecured creditors would be able to receive in the debtor's bankruptcy case. *Id.* at 590. As the Fifth Circuit noted, "the letter of credit itself and the payments thereunder may not be property of [the] debtor, but the collateral pledged as a security interest for the letter is." *Id.* at 590–91.

The *Blue Quail* court differentiated between the direct transfer—from the debtor to the issuer—and the indirect transfer—from the debtor to the prepetition unsecured creditor who was the beneficiary of the letter of credit. *Id.* at 591. Importantly, however, the court recognized this distinction only where the effect of the debtor's direct transfer was to improve the creditor-beneficiary's recovery on its antecedent unsecured debt—in other words, where the prepetition unsecured creditor of the debtor received an indirect preference under § 547 by the transfer of collateral to secure the letter of credit, which enabled the creditor-beneficiary to receive more than other unsecured creditors of the debtor in the debtor's bankruptcy case. *Id.* at 591–92.

Here, the *Blue Quail* analysis is inapposite both legally—because the Trustee is not seeking to avoid a preferential transfer under § 547—and factually—because the Trustee did not use the Letter of Credit to enhance Kemper's recovery on an antecedent unsecured debt. Furthermore, the *Blue Quail* court specifically stated that it did *not* hold that payment under a letter of credit is property of a debtor under § 541. *Id.* at 595.

For these reasons, the Court rejects the Trustee's argument that the transfer of estate funds to Chase to secure the Trustee's repayment obligations under the Security Agreement resulted in an improper indirect post-petition transfer to the Defendants that is avoidable under § 549.[21]

Finally, the Court must analyze the Trustee's attempts to recover the Unreimbursed Amount from the Defendants—*i.e.*, the $85,082.41 that Kemper paid to Gallagher Bassett, for which Kemper has not been reimbursed because the Trustee sought and obtained a TRO restraining any draw on the Letter of Credit by Kemper for this amount. While the Trustee's attempts to recover these funds from the Defendants fail for all of the reasons stated above with respect to the Reimbursed Amount (even assuming that Kemper ultimately draws down on the Letter of Credit to reimburse itself for its payment to Gallagher Bassett), the Trustee's claims suffer from a further impediment – *i.e.*, they are not yet ripe for adjudication. The estate has suffered no loss at this time. It is simply premature for the Trustee to sue to recover funds that it has not yet been required to pay out. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (citations and internal quotations marks omitted); *United Transp. Union v. Foster*, 205 F.3d

---

[21] In response to the Court's questions at the Hearing, counsel for the Trustee sent the Court a letter, dated May 30, 2008 (the "Letter") referencing an additional case, *Two Trees v. Builders Transport, Inc. (In re Builders Transport, Inc.)* [hereinafter *Builders*], 471 F.3d 1178 (11th Cir. 2006), *cert. denied*, 127 S.Ct. 2112 (2007). According to the Trustee, the holding in *Builders* "squarely addresses the single issue of whether the Trustee's claims here involve 'property of the estate' despite the presence of a letter of credit." Letter p. 1.

Although the facts of *Builders* are more convoluted, the *Builders* court applies the same analysis that was employed by the Fifth Circuit in *Stonebridge*. In *Builders*, a lessee-debtor purchased a letter of credit prepetition to secure its obligations under a lease. 471 F.3d at 1186. After an intricate series of transactions, the lessor-beneficiary ultimately received the benefit of the proceeds from the letter of credit *Id.* at 1183. The Trustee sued the beneficiary for turnover under § 542. *Id.* at 1183–84. The beneficiary argued that proceeds of a letter of credit are not property of the estate. *Id.* at 1185. The *Builders* court stated that "once the proceeds of a letter of credit have been drawn down, the underlying contracts become pertinent in determining which parties have a right to [the] proceeds." *Id.* at 1186 (internal citations and quotations marks omitted). The *Builders* court then looked to the lease and determined that the lessor was not entitled to retain proceeds of the letter of credit in excess of the lessor's damages for the lessee's breach of the lease. *Id.* at 1193.

For the reasons stated previously, this excess-proceeds case does not assist the Trustee here. *See supra* pp. 12–14. The *Builders* case adds nothing to the analysis.

**Memorandum Opinion and Order**                                                          **Page 21**

851, 857 (5th Cir. 2000) ("Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review.") (citations and internal quotation marks omitted).

### 3. Trustee's § 105 Argument

As noted previously, in the Trustee's Brief, the Trustee argues that the Court should use its inherent authority under § 105(a) of the Bankruptcy Code to enforce the ADR Order and require the Defendants to return the funds. Trustee's Brief pp. 13–14. Chamblee & Ryan objects to this argument because the Trustee has pled no such claim in the Amended Complaint. Chamblee & Ryan's Reply to Plaintiff's Summary Judgment Response and Brief in Support, Docket No. 106, ¶ 20. According to Chamblee & Ryan, it is too late for the Trustee to further amend his complaint because the deadline for the Trustee to do so has passed. *Id.*

The Court agrees with Chamblee & Ryan. Although the Trustee has not sought leave to further amend the Amended Complaint to assert his new theory of recovery—*i.e.*, his § 105(a) claim, it is simply too late for the Trustee to do so. *See Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir.2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.") (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990)); *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Accordingly, the Court will not consider this final argument advanced by the Trustee to attempt to avoid the granting of a summary judgment in the Defendants' favor.

IV.     **Conclusion**

The funds Kemper paid to Gallagher Bassett, which Gallagher Bassett then paid to Chamblee & Ryan and The Medleh Group, were not property of the estate. Rather, those funds were Kemper's funds. Moreover, the Trustee has produced no legal authority that would allow the Court to apply a diminution-to-the-estate or indirect-transfer analysis to his § 549 claims in the context of a letter-of-credit transaction such as that at issue here. Because the funds received by the Defendants are not property of the TIC bankruptcy estate as a matter of law, the Trustee cannot recover on any of the claims pled in the Amended Complaint.

It is therefore **ORDERED** that the Summary Judgment Motion filed by Chamblee & Ryan, and joined in by Gallagher Bassett, is granted. Counsel for Chamblee & Ryan and Gallagher Bassett are directed to prepare a judgment consistent with this Memorandum Opinion and Order and present it to counsel for the Trustee to approve as to form before uploading it for entry by the Court.

### End of Memorandum Opinion and Order ###